FILED ELECTRONICALLY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------- X

ADVANCED GLOBAL TECHNOLOGY, LLC,                :
                                                :
                                    Plaintiff,  :
                                                :
          v.                                    :
                                                :   No. 07cv3654 (JSR) (DCF)
XM SATELLITE RADIO INC.,                        :   ECF CASE
                                                :
                                   Defendant.   :
                                                :
                                                :
----------------------------------------------------------------------- X

**PLAINTIFF ADVANCED GLOBAL TECHNOLOGY, LLC'S
MEMORANDUM IN OPPOSITION TO DEFENDANT'S
<u>MOTION TO DISMISS</u>**

Molly S. Boast
Ann H. Mathews
**DEBEVOISE & PLIMPTON LLP**
919 Third Avenue
New York, NY 10022
(212) 909-6000

**Attorneys for Plaintiff
Advanced Global Technology, LLC**

Table of Contents

Page

# TABLE OF CONTENTS

Preliminary Statement.............................................................................................................1

Background ..............................................................................................................................2

ARGUMENT ...........................................................................................................................6

I.    AGT'S CLAIM FOR RELIEF IS RIPE FOR ADJUDICATION AND SHOULD NOT BE
      DISMISSED UNDER RULE 12(b)(1). .............................................................................6

II.   AGT ALLEGES FACTS SUFFICIENT TO DEMONSTRATE THAT AN AWARD OF
      SPECIFIC PERFORMANCE IS APPROPRIATE IN THIS CASE AND SHOULD NOT BE
      DISMISSED UNDER RULE 12(b)(6). .............................................................................9

III.  NOTHING IN THE AGREEMENT BETWEEN THE PARTIES OR THEIR COURSE OF
      PERFORMANCE MITIGATES AGAINST EQUITABLE RELIEF. ........................................15

CONCLUSION ......................................................................................................................18

22508167

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) .................................................................6, 7

*Am. Motor Club, Inc. v. Corcoran*, 644 F. Supp. 862 (S.D.N.Y. 1986) ...........................14

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*, 04 Civ. 10014, 2006 U.S. Dist. LEXIS 34709 (S.D.N.Y. May 31, 2006) .......................................................10

*Atsi Commc'ns, Inc. v. Shaar Fund*, 05-5132-cv  and 05-2593-cv, 2007 U.S. App. LEXIS 16382, at *17 (2d Cir. July 11, 2007) ..................................................................9

*Bernheim v. Litt*, 79 F.3d 318 (2d Cir. 1996) ......................................................................6

*Bethlehem Eng'g Export Co. v. Christie*, 105 F.2d 933 (S.D.N.Y. 1939) ........................15

*Brooklyn Hosp. Ctr. v. Westport Ins. Corp.*, 03 Civ. 5190, 2004 U.S. Dist. LEXIS 6931 (S.D.N.Y. Apr. 21, 2004) ........................................................................................8

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F. Supp. 2d 293 (S.D.N.Y. 2003) ...............................................................................................................8

*Goodman Mfg. Co. L.P. v. Raytheon Co.*, 98 Civ. 2774, 1999 U.S. Dist. LEXIS 13418 (S.D.N.Y. 1999) .......................................................................................9, 15, 17

*Hutton v. Klabal Gallery*, 726 F. Supp. 67 (S.D.N.Y. 1989) ...........................................12

*La Mirada Prods. Co. v. Wassall PLC*, 823 F. Supp. 138 (S.D.N.Y. 1993) ....................13

*Litho Prestige v. News Am. Publ'g, Inc.*, 652 F. Supp. 805 (S.D.N.Y. 1989) ..................12

*Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243 (2d Cir. 2002) ......................................12

*Reuben H. Donnelly Corp. v. Mark I Mktg. Corp.¸* 893 F. Supp. 285 (S.D.N.Y. 1995)................................................................................................................................11

*Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co. of N.Y.*, Inc., 749 F.2d 124 (2d Cir. 1984) .................................................................................................14

*SATCOM Int'l Group PLC v. ORBCOMM Int'l Partners, L.P.*, 2000 U.S. Dist. LEXIS 7739 (S.D.N.Y. 2000) .......................................................................................16

22508167

*SATCOM Int'l Group PLC v. ORCOMM Int'l Partners, L.P.*, 49 F. Supp. 2d 331 (S.D.N.Y. 1999) ...........................................................................................11

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ...........................................................9

*Shred-It, USA, Inc. v. Mobile Data Shred, Inc.*, 202 F. Supp. 2d 228 (S.D.N.Y. 2002)................................................................................................................9

*Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63 (2d Cir. 1999).................................14

*Travellers Int'l AG v. Trans World Airlines, Inc.*, 722 F. Supp. 1087 (S.D.N.Y. 1989)................................................................................................14, 15, 17

*USA Network v. Jones Intercable, Inc.*, 704 F. Supp. 488 (S.D.N.Y. 1989) ................9, 14

*Williams v. Breslin*, 274 F. Supp. 2d 421 (S.D.N.Y. 2003) ..................................6

## STATE CASES

*Dweck v. Oppenheimer & Co.*, 30 A.D.3d 163, 816 N.Y.S. 2d 440 (1st Dep't 2006).................................................................................................................12

*Sokoloff v. Harriman Estates Dev. Corp.*, 96 N.Y.2d 409 (2001) ..............................10, 14

*Town of Austerlitz v. Dugwest Assocs., LLC*, 24 A.D.3d 847, 804 N.Y.S.2d 859 (3d Dep't 2005) ...............................................................................................11

*Van Wagner Adver. Corp. v. S & M Enters.*, 67 N.Y.2d 186 (1986)...............................12

## SECONDARY SOURCES

Restatement (Second) of Contracts § 357..........................................................9

Restatement (Second) of Contracts § 360..........................................................10

22508167



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
ADVANCED GLOBAL TECHNOLOGY, LLC,          :
                                          :
                              Plaintiff,  :
              v.                          :
                                          :   No. 07cv3654 (JSR) (DCF)
XM SATELLITE RADIO INC.,                   :   ECF CASE
                                          :
                              Defendant.  :
                                          :
                                          :
                                          :
------------------------------------------------------------------- X

### PLAINTIFF ADVANCED GLOBAL TECHNOLOGY, LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S <u>MOTION TO DISMISS</u>

Plaintiff Advanced Global Technology, LLC ("Plaintiff" or "AGT"), by its

undersigned counsel, respectfully submits this memorandum in opposition to Defendant's

Motion to Dismiss.

### <u>Preliminary Statement</u>

Defendant XM Satellite Radio Inc. ("Defendant" or "XM") disregards the

standard of review applicable to a motion to dismiss and misreads, and in some cases

ignores entire portions of, AGT's complaint in an effort to convince this Court that

AGT's claim is not ripe for adjudication and not suitable for equitable relief.  XM is

incorrect – on the facts and the law – on both counts.  AGT's complaint alleges numerous

actions taken by XM that have violated and continue to violate AGT's agreement with

XM.  AGT's claim, as alleged, is based on identifiable past and present conduct, not

1

speculation about possible future conduct as XM would have this Court believe.  AGT's complaint also alleges facts sufficient to demonstrate that money damages are not an adequate remedy in this case and that equitable relief, including specific performance, is warranted.  Where, as here, the Agreement specifically anticipates the need for equitable relief and involves a unique relationship for which a market value is difficult to calculate, and where XM's ongoing conduct threatens to destroy AGT's business in the satellite radio industry, it is entirely within the sound discretion of this Court to award equitable relief.  Moreover, nothing in the Agreement itself or in the parties' dealings with one another to date suggests that equitable relief would be difficult to implement in this case. In short, AGT's complaint more than adequately demonstrates for pleading purposes that AGT's claim is ripe for review and equitable relief is warranted and appropriate.

## **<u>Background</u>**

AGT, a company that designs, develops and distributes a range of innovative consumer electronics, entered into an agreement with XM in October 2005 to develop and distribute receivers compatible with XM's satellite radio service over a four-year term.  (Compl. ¶¶ 3, 9-10).  AGT and XM spent nearly two years prior to October 2005 discussing the opportunity for negotiating the Master License Agreement (the "Agreement") between the parties.  (Compl. ¶¶ 8-9).

The Agreement expressly delineates certain rights and obligations of both parties. For instance, it gives AGT the rights to all XM technology, data and content for Licensed Products on a "most favored nations" basis.  (Compl. ¶ 11).  Specifically, the Agreement

22508167

provides that AGT "will have complete access to all present and future technology development by XM and its Affiliates (including XM Chipsets) that XM or its Affiliates makes available to any third party commercial purchaser of XM Chipsets" (Compl. ¶ 11(a) & Ex. A ¶ 2.2.1) and that XM "shall not provide other third party manufacturers or distributors . . . more favorable treatment than it provides with regards to access to technical information about XM's technology 'roadmap' and chipset pricing and availability (Compl. ¶ 14(b) & Ex. A ¶ 6.9.3).[1] The Agreement also prohibits XM from providing other third-party manufacturers or distributors with subsidy payments "that are more favorable than those provided to [AGT] on the same product category with similar price points," (Compl. ¶ 14(a) & Ex. A ¶ 6.9.2), and requires XM "to provide at least as much aggregate promotional support for [AGT]'s Licensed Products" as it provides to other third parties for the same product category with similar price points (Compl. ¶ 14(c) & Ex. A ¶ 6.9.6).

The Agreement also requires the parties to work collaboratively to market AGT's Licensed Products. It provides that the parties will schedule regular meetings to review AGT's progress and efforts in designing, distributing, and marketing products (Compl. Ex. A ¶ 2.1.3) and provides that the parties "will each use commercially reasonable

---

[1]    Contrary to XM's characterization of the Agreement, Def. Mem. at 4, Section 6.9.3 (which requires that XM provide AGT with access to information about XM's technology, chipset pricing and chipset availability on terms at least as favorable as XM provides to other third party distributors and manufacturers) is *not* limited to products in the same product category with similar price points but applies across the board to all products.

3

efforts to market" AGT's products and "to coordinate their marketing efforts" (Compl. Ex. A ¶ 4.1). The Agreement provides that so long as AGT's product prototypes pass XM's product tests, with "approval not to be unreasonably withheld, the products will be certified as 'Licensed Products'" under the Agreement. (Compl. ¶ 11(e) & Ex. A ¶ 2.5.2).

The Agreement further provides for resolution of disputes arising under the Agreement. In particular, the Agreement provides for arbitration of disputes (Compl. Ex. A ¶¶ 12.1, 12.2.1-12.2.3) but explicitly states that nothing in the Agreement "will preclude either Party from seeking equitable relief from a court for the other Party's breach of its obligations specified in this Master Agreement." (Compl. ¶ 17 & Ex. A ¶ 12.2.4). The Agreement specifically excludes damages for all but a narrow class of monetary losses ("lost profits reflected in written binding, non-cancelable orders by company's customers . . . or amounts due from XM to AGT for licensed products produced") to be awarded through arbitration. (Compl. Ex. A ¶ 6.8.2).

<u>XM's Past and Current Conduct</u>

AGT's complaint alleges in detail unequivocal past and current conduct by XM that breaches the Agreement. *First*, although AGT and XM originally agreed in February 2006 upon a sales projection for the year 2006 of 1.5 million Sportscaster units (Compl. ¶ 24) – a number on which AGT relied when ordering units and planning promotional efforts – XM unilaterally reduced that projection dramatically to 450,000 on June 30, 2006 and then to 150,000 in October 2006, resulting in substantially decreased sales for the Sportscaster (Compl. ¶¶ 29, 32). *Second*, XM has exacerbated this problem

by taking a number of steps to undermine the competitive price position of AGT's Sportscaster product, which has also resulted in substantially decreased Sportscaster sales. (Compl. ¶¶ 34-41). *Third*, XM has abandoned the Sportscaster and has repeatedly refused to meet with AGT representatives to discuss its actions. (Compl. ¶¶ 42-47). *Finally*, XM has failed to approve AGT's new product concepts while endorsing product concepts for other distributors that are virtually identical to those proposed by AGT. (Compl. ¶¶ 49, 51). XM has also informed AGT that it is moving to a single distributorship model with Audiovox (Compl. ¶ 53) and has provided Audiovox with greater access to technology and chipset pricing and availability than it has to AGT (Compl. ¶ 50).

In short, and as detailed in the complaint, XM steadfastly backed away from its contractual commitments under the Agreement during the first year of a four-year agreement. (Compl. ¶ 6). XM's actions resulted in significantly fewer sales of AGT's Sportscaster product than the parties originally contemplated – and AGT relied upon – in February 2006. And to date, XM has unnecessarily withheld approval of any new AGT products for use with the XM Service, refusing even to give due consideration to AGT's new product ideas. XM's refusal to honor its contractual commitments under the Agreement has essentially put AGT out of the satellite radio business. *Id.*

AGT's Requested Relief

AGT's requested relief – specific performance together with other declaratory and injunctive relief – is specifically provided for and anticipated in the Agreement. (Compl. ¶ 17 & Ex. A ¶ 12.2.4). Its request is narrowly tailored to ensure XM's compliance with

5

its most critical affirmative obligations under the Agreement:  (*i*) providing competitive pricing for AGT's products; (*ii*) ensuring AGT's guaranteed profit margin; (*iii*) using commercially reasonable efforts to market AGT's products and coordinating those efforts with AGT; (*iv*) providing AGT with no less favorable access to information and technology and chipset pricing and availability than XM provides to other third-party manufacturers or distributors; and (*v*) not unreasonably withholding approval of AGT's new products.  (Compl. ¶ A).  Absent the requested relief, XM will continue to fail to abide by its contractual obligations.  (Compl. ¶ 68).

## ARGUMENT

When considering a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the Court "must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir. 1996) (citation omitted); *see also Williams v. Breslin,* 274 F. Supp. 2d 421, 425 (S.D.N.Y. 2003).  AGT's complaint – particularly when read, as it must be on this motion to dismiss, in the light most favorable to AGT – plainly alleges a claim for relief that is ripe for this Court's review and suitable for equitable relief.

**I.**    **AGT'S CLAIM FOR RELIEF IS RIPE FOR ADJUDICATION AND SHOULD NOT BE DISMISSED UNDER RULE 12(b)(1).**

The ripeness doctrine prevents courts "from entangling themselves in abstract disagreements" between parties.  *Abbott Labs.* v. *Gardner*, 387 U.S. 136, 148-149 (1967). The determination of whether AGT's claim is ripe for review turns on "the fitness of the

6

issues for judicial decision and the hardship to the parties of withholding court consideration." *Id*. at 149.  AGT's claim is ripe for adjudication because it rests upon concrete allegations – wholly ignored by XM in its opening brief – of past and present conduct by XM that breaches the Agreement and threatens AGT's business.

AGT's complaint alleges as the basis for its request for specific performance that, among other things: XM has failed to use commercially reasonable efforts to market AGT's products and to coordinate those efforts with AGT in violation of Section 4.1 of the Agreement (Compl. ¶¶ 34-41, 64); XM has failed to provide AGT with no less favorable access to information and technology and chipset pricing and availability than XM provides to other third-party manufacturers or distributors in violation of Section 6.9.3 of the Agreement (Compl. ¶¶ 50-51, 65); and XM has unreasonably withheld approval of AGT's new products in violation of Section 2.5.2 of the Agreement (Compl. ¶¶ 48-49, 51, 63, 67).[2]  This past and present conduct by XM has severely damaged, in fact has essentially eliminated, AGT's satellite radio business (Compl. ¶ 6).  Taken together, these facts – which must be construed in the light most favorable to AGT on this motion to dismiss – more than adequately allege a real and present controversy that is fit for judicial review, without which AGT will continue to suffer harm.  *Abbott Labs.*, 387 U.S. at 149.

---

[2]    XM's suggestion that AGT fails to allege that it has provided XM with design or development plans and related materials simply cannot stand.  Def. Mem. at 10. AGT clearly alleges that it has made new product proposals to XM and requested meetings with XM to discuss those proposals, all to no avail.  Compl. ¶¶ 48-49, 63, 67.

7

In addition, the complaint alleges past conduct regarding XM's relationship with Audiovox that breaches the Agreement, not contingent or uncertain events or abstract possibilities as XM attempts to argue.  Specifically, the complaint alleges that an XM representative "told AGT representatives on October 31, 2006 that she had received a clear directive that XM was moving to a single distributorship model with Audiovox" (Compl. ¶ 53) and that an exclusive distributorship arrangement with Audiovox constitutes a breach of the Agreement (Compl. ¶ 66).  These allegations demonstrate a substantial controversy between XM and AGT of sufficient immediacy (and harm to AGT) to warrant declaratory relief.  *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F. Supp. 2d 293, 295 (S.D.N.Y. 2003) (declaratory judgment action is ripe for review when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment") (internal quotation and citation omitted); *cf. Brooklyn Hosp. Ctr. v. Westport Ins. Corp.*, 3 Civ. 5190, 2004 U.S. Dist. LEXIS 6931 (S.D.N.Y. Apr. 21, 2004) (claim for declaratory relief was ripe where plaintiff alleged that it relied to its detriment on defendant's representations that proof of loss figures under an insurance contract would not be due until finalized figures were available only to have defendant refuse to grant plaintiff an extension of time to complete those final figures).[3]

---

[3]     XM also appears to argue that AGT's request for injunctive relief to protect AGT's rights in the event of a merger between XM and Sirius is not ripe because it rests on uncertain future events.  AGT alleges that XM is actively pursuing a potential merger with Sirius, Compl. ¶ 54, and is in negotiations with Sirius that have been publicized widely in the media and of which this Court can take judicial notice.

8

**II.**    **AGT ALLEGES FACTS SUFFICIENT TO DEMONSTRATE THAT AN AWARD OF SPECIFIC PERFORMANCE IS APPROPRIATE IN THIS CASE AND SHOULD NOT BE DISMISSED UNDER RULE 12(b)(6).**

A complaint may be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) only if the plaintiff fails to allege facts sufficient "to raise a right to relief above the speculative level." *Atsi Commc'ns, Inc. v. Shaar Fund*, 05-5132-cv, 05-2593-cv, 2007 U.S. App. LEXIS 16382, at *17 (2d Cir. July 11, 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)).  In reviewing the sufficiency of a complaint at this pleading stage, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

Given the fact-specific nature of a court's determination of whether specific performance is warranted in a particular case, dismissal is rarely appropriate at an early procedural stage of the litigation.  *See Shred-It, USA, Inc. v. Mobile Data Shred, Inc.*, 202 F. Supp. 2d 228, 234 (S.D.N.Y. 2002) (question of whether equitable relief is appropriate cannot often be decided on a motion to dismiss); *Goodman Mfg. Co. L.P. v. Raytheon Co.*, 98 Civ. 2774,1999 U.S. Dist. LEXIS 13418, at *32 (S.D.N.Y. 1999) ("Balancing the

---

AGT also alleges that contemporaneously with these merger discussions, both XM and Sirius have moved toward a single distributorship model with third-party distributors, Compl. ¶¶ 53-55, a model that would breach XM's agreement with AGT, Compl. ¶ 66.  AGT's allegations do not rest on mere speculation but on identifiable actions that warrant relief.  Injunctive relief is appropriate when a party's conduct threatens to breach its contract with the party seeking relief.  *See*, *e.g.*, *USA Network v. Jones Intercable, Inc.*, 704 F. Supp. 488, 491 (S.D.N.Y. 1989) (injunctive relief appropriate when prospective breach threatens a party's continued business operations) (citations omitted); Restatement (Second) of Contracts § 357.

22508167

hardships and equities of both parties, which is necessary to resolve [a claim for equitable relief], would be singularly inappropriate at this stage of the proceedings."); *see also Sokoloff v. Harriman Dev. Corp.*, 96 N.Y.2d 409, 415 (2001) ("Whether money damages would adequately compensate plaintiffs for loss of these allegedly unique [goods] is a matter to be resolved at a later stage, not on a motion to dismiss the complaint.").

While "[i]n general, specific performance will not be ordered where money damages would be adequate to protect the expectation interest of the injured party[,] . . . specific performance is a proper remedy where the subject matter of the particular contract is unique and has no established market value." *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*, 04 Civ. 10014, 2006 U.S. Dist. LEXIS 34709, at *28 (S.D.N.Y. May 31, 2006) (internal quotations and citations omitted). In determining whether money damages would be an adequate remedy, "'a trial court must consider, among other factors, the difficulty of proving damages with reasonable certainty and of procuring a suitable substitute performance with a damages award.'" *Id*. (quoting *Sokoloff*, 96 N.Y.2d at 415); *see also* Restatement (Second) of Contracts § 360 (same). Moreover, "the existence of a remedy at law does not preclude the granting of specific performance" so long as the plaintiff "demonstrate[s] that remedies at law are incomplete and inadequate to accomplish substantial justice." *Aristocrat Leisure*, 2006 U.S. Dist. LEXIS 34709, at *26 (citations omitted).

AGT's complaint more than adequately demonstrates for pleading purposes at this early stage of the litigation that specific performance is entirely warranted and appropriate in this case. As discussed in more detail below, factors supporting an award

10

of specific performance in this case include the fact that (*i*) the licensing agreement involves a unique relationship; (*ii*) monetary damages cannot be determined with any reasonable certainty; and (*iii*) absent an award of specific performance, AGT will be out of the satellite radio business entirely.[4]

As an initial matter, the Agreement between the parties specifically contemplates the need for equitable relief.  (*See* Compl. ¶ 17 & Ex. A ¶ 12.2.4 ("Nothing in this [section regarding arbitration] will preclude either Party from seeking equitable relief for the other Party's breach of its obligations specified in this Master Agreement.")).  The Agreement provides for arbitration of only an extremely narrow class of money damage claims (Compl. Ex. A ¶ 6.8.2), and the obvious (and sensible) trade-off is the Agreement's provision for broad equitable relief in a court of law.  The parties specifically envisioned claims that could not be resolved or remedied through an arbitrator's award of limited money damages, and AGT's claim is precisely such a situation.  *Cf. SATCOM Int'l Group PLC v. ORCOMM Int'l Partners, L.P.*, 49 F. Supp. 2d 331 (S.D.N.Y. 1999) (ruling on merits of request for equitable relief when parties

---

[4]    In arguing that AGT fails to allege facts to suggest that its remedy at law would be inadequate, XM ignores clear allegations in the complaint demonstrating this point. Even if true, however, "the failure to set forth in the complaint an allegation of no adequate remedy at law does not require immediate dismissal of a specific performance cause of action."  *Town of Austerlitz v. Dugwest Assocs., LLC*, 24 A.D.3d 847, 848-49, 804 N.Y.S.2d 859, 860 (3d Dep't 2005).  At a minimum, if this Court were unsatisfied with the sufficiency of AGT's pleadings, the proper recourse would be to grant AGT leave to amend its complaint to supplement its allegations supporting the need for specific performance in this case.  *See Reuben H. Donnelly Corp. v. Mark I Mktg. Corp.¸* 893 F. Supp. 285, 294 (S.D.N.Y. 1995).

specifically carved out equitable remedies from an arbitration provision otherwise governing disputes arising under licensing agreement).

The key to determining adequacy of money damages rests in the ability to project losses due to a breach of contract. *See Van Wagner Adver. Corp. v. S & M Enters.*, 67 N.Y.2d 186, 193 (1986) ("What matters, in measuring money damages, is the volume, refinement, and reliability of the available information about substitutes for the subject matter of the breached contract."). The unique nature of the subject matter of the Agreement and XM's obligations to AGT necessarily renders calculation of its market value inherently difficult.[5] As demonstrated in AGT's complaint, the Agreement between AGT and XM involves the licensing of unique goods – radio receivers compatible for use with XM's satellite radio service (one of only two satellite radio services in the United States). (Compl. ¶¶ 10, 54). While it might be possible to craft an arbitral claim for the narrowly defined lost profit damages permitted under the Agreement (Compl. Ex. A ¶ 6.8.2), the specific breaches alleged in the complaint

---

[5]     Unlike the instant case, which involves unique subject matter and uncertain market values, the cases relied upon by XM to suggest that money damages would be adequate to compensate AGT for XM's breach involved situations where calculation of money damages was straightforward and noncontroversial. *See, e.g., Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 262 (2d Cir. 2002) (no difficulty calculating stock options allegedly due plaintiff); *Hutton v. Klabal Gallery,* 726 F. Supp. 67, 73 (S.D.N.Y. 1989) (no difficulty calculating the $156,000 allegedly due plaintiff for defendant's failure to obtain and resell certain artwork); *Litho Prestige v. News Am. Pub., Inc.*, 652 F. Supp. 805, 809 (S.D.N.Y. 1989) ("The principal injury plaintiff will suffer if defendant terminates the contract – loss of defendant's contract payments for printing services – may be calculated to the last cent."); *Dweck v. Oppenheimer & Co.*, 30 A.D.3d 163, 163, 816 N.Y.S. 2d 440, 400 (1st Dep't 2006) (no difficulty calculating "lost income derived essentially from a fixed interest rate").

(including but not limited to the failure to cooperate and discrimination in violation of most favored nations provisions) have no obvious market value, are ongoing, and can be redressed only if specific performance is awarded. Given that AGT receivers must employ the XM chipset and technology in order to receive XM's signal (Compl. Ex. A ¶¶ 1.38, 2.1.1, 2.2.1), without the nondiscriminatory access to XM chipset and technology any receivers that AGT would manufacture would be useless to consumers trying to access the XM service. Moreover, AGT cannot simply obtain a monetary award and then go out into the marketplace and recreate its licensing agreement with another satellite radio provider – particularly now that XM is actively pursing a merger with its only competitor in the satellite radio market and both companies are moving to single distributorship models (Compl. ¶¶ 53-55). If XM's position that AGT is not entitled to seek specific performance were correct, XM essentially would be permitted to breach with impunity.

Specific performance is also fitting here because "the assessment of monetary damages is impractical or too speculative." *La Mirada Prods. Co. v. Wassall PLC*, 823 F. Supp. 138, 141 (S.D.N.Y. 1993) (citations omitted). XM's breaching conduct began less than one year into a four-year agreement during which AGT produced and marketed only one XM-approved product. (*See, e.g*., Compl. ¶¶ 9, 10, 29-33, 42-53). Determining the volume of Sportscaster receivers AGT would have sold had the product been appropriately supported by XM, much less the volume of sales and resulting profits AGT would have realized had XM exercised reasonable approval of AGT's further product designs, is extraordinarily difficult (if not impossible) to project, and again, even more so

13

in light of the merger with Sirius. *See Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) (recognizing that it is "very difficult to calculate monetary damages that would successfully redress the loss of a relationship . . . that would produce an indeterminate amount of business in years to come").

Moreover, specific performance is particularly appropriate where, as here, XM's conduct has essentially put AGT entirely out of the satellite radio business (Compl. ¶ 6) and damaged its reputation with its retail customers (Compl. ¶¶ 25, 28, 31, 41, 46). *USA Network v. Jones Intercable, Inc.*, 704 F. Supp. 488, 491 (S.D.N.Y. 1989) (equitable relief appropriate when prospective breach threatens the "destruction or catastrophic impairment of an ongoing business") (citations omitted); *see also Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co. of N.Y, Inc.*, 749 F.2d 124, 125-26 (2d Cir. 1984) (loss of distributorship cannot be fully compensated by subsequent monetary damages*; Travellers Int'l AG v. Trans World Airlines, Inc*., 722 F. Supp. 1087, 1105 (S.D.N.Y. 1989) (awarding specific performance where plaintiff did roughly 90-95% of its business with the defendant and had no prospects for a substitute relationship); *Am. Motor Club, Inc. v. Corcoran*, 644 F. Supp. 862, 866 (S.D.N.Y. 1986) ("potential damage to [plaintiff] of up to 30% and possibly even 70% of its normal sales is sufficient to constitute irreparable harm" befitting equitable relief).

At a minimum, discovery is warranted to determine "[w]hether money damages would adequately compensate plaintiffs for loss of these allegedly unique [goods]." *Sokoloff*, 96 N.Y.2d at 415. It is simply not possible for the Court to determine

14

dispositively in the absence of a record that specific performance is not justified in this case. *See Goodman Mfg. Co. L.P.*, 1999 U.S. Dist. LEXIS 13418, at *32.

### III.    NOTHING IN THE AGREEMENT BETWEEN THE PARTIES OR THEIR COURSE OF PERFORMANCE MITIGATES AGAINST EQUITABLE RELIEF.

XM's suggestion that specific performance is inappropriate in this case because the parties have encountered past difficulties in their relationship is both illogical – as most litigation involves parties experiencing difficulties of one sort or another – and a misstatement of the law. *See, e.g., Travellers*, 722 F. Supp. at 1105 (long history of disputes does not prevent specific performance where parties were able to do some amount of business together despite their differences). Although XM began to fall short of its commitments under the Agreement just a few months into the contract, and production problems on the part of XM and its manufacturer caused a delay, the parties nonetheless were able to launch the Sportscaster (Compl. ¶ 24-25, 37-38), and XM reluctantly provided some (albeit inadequate) promotional support for the product at AGT's urging (Compl. ¶¶ 38-40).

Similarly, XM's argument that the Agreement is so "fraught with ambiguities" as to be ineligible as a matter of law for equitable relief for which the parties specifically provided (Compl. Ex. A ¶ 12.2.4) rests on a selective reading of the Agreement and a misreading of the relevant case law. Unlike the contract in *Bethlehem Eng'g Export Co. v. Christie*, 105 F.2d 933, 934 (S.D.N.Y. 1939), the sole case relied upon by XM on this point, in which *no* material terms were clear and independently enforceable, the Agreement here imposes straightforward obligations on XM. For example, the

Agreement requires XM to: (*i*) provide AGT "complete access to all [of its] present and future technology . . . (including XM chipsets)" and advise AGT "of any new development of technology in a reasonable time frame for [AGT] to prepare for integration and development" (Compl. Ex. A ¶ 2.2.1); (*ii*) provide AGT all technical data that XM makes available to third parties (Compl. Ex. A ¶ 2.2.2), (*iii*) provide AGT "the results of any market research related to the Licensed Products" and meet periodically with AGT (with a goal of at least once per month) for a marketing review (Compl. Ex. A ¶¶ 4.1.2, 4.6); (*iv*) guarantee AGT a profit margin of at least 29% on all Licensed Products (Compl. Ex. A ¶ 4.8); and (*v*) refrain from providing other third-party distributors or manufacturers "more favorable treatment . . . with regards to access to technical information about XM's technology 'roadmap' and chipset pricing and availability" (Compl. Ex. A ¶ 6.9.3).

Ignoring these express contractual obligations, XM instead selects a handful of terms that it characterizes as "nebulous" from the twenty-page Agreement. These allegedly incomprehensible terms include commonly used and understood contractual language such as "commercially reasonable efforts," "business need," "work closely," "coordinate," and "unreasonably." Contrary to XM's argument, however, courts routinely interpret and enforce contractual terms such as these. *See, e.g., SATCOM Int'l Group PLC v. ORBCOMM Int'l Partners, L.P.*, 98 CIV. 9095, 2000 U.S. Dist. LEXIS 7739, at *46-*61 (S.D.N.Y. June 6, 2000) (interpreting contract provision requiring party to use "all commercially reasonable efforts" in marketing and promoting the licensed

system and in applying for permits to construct and operate satellite system gateways in various countries).

AGT is at least entitled to present evidence demonstrating that the meanings of the contractual terms were, and are, well understood by the parties. *Cf. Travellers*, 722 F. Supp. 1105-06 (ordering defendants to specifically perform after assessing evidence of the parties' past performance to determine meaning of contractual terms). This evidence would not only give meaning to the contractual terms but also "provide[] more than adequate direction to enable [the parties] to operate . . . in the future without continual judicial involvement," which would alleviate one of XM's purported concerns about the need for continued judicial oversight. *Id*. at 1105. For the Court to determine conclusively that specific performance is not warranted would be "singularly inappropriate at this stage in the proceedings." *Goodman Mfg. Co. L.P.*, 1999 U.S. Dist. LEXIS 13418, at *32.

**CONCLUSION**

For all of the foregoing reasons, Defendant XM's Motion to Dismiss should be

denied.

Dated: July 13, 2007

                                        Respectfully submitted,

                                        \_\_\_\_/s/ Ann H. Mathews_____

                                        Molly S. Boast
                                        Ann H. Mathews
                                        **DEBEVOISE & PLIMPTON LLP**
                                        919 Third Avenue
                                        New York, NY 10022
                                        (212) 909-6000

18