Jeffrey A. Mishkin (JM-8380)
Anthony J. Dreyer (AD-3571)
Peter S. Julian (PJ-3443)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
*Attorneys for Defendant XM Satellite Radio Inc.*


UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ADVANCED GLOBAL TECHNOLOGY,        :
LLC,
                                   :
            Plaintiff,             :    No. 07 cv 3654 (JSR) (DCF)
                                        ECF CASE
      - against -                  :

XM SATELLITE RADIO INC.,           :

            Defendant.             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

## Table of Contents

**_Page_**

Table of Authorities ................................................................................................................. ii

Preliminary Statement ............................................................................................................. 1

Argument ................................................................................................................................ 2

I.   AGT HAS NOT DEMONSTRATED THAT ITS CLAIM FOR EQUITABLE RELIEF IS RIPE .................................................................................................. 2

II.  AGT HAS NOT ALLEGED SUFFICIENT FACTS TO SUGGEST THAT IT HAS AN INADEQUATE REMEDY AT LAW ............................................... 3

III. AGT HAS NOT SHOWN THAT SPECIFIC PERFORMANCE IN THIS CASE IS FEASIBLE ................................................................................................. 8

Conclusion ............................................................................................................................. 10

## Table of Authorities

*Cases*                                                                                                                                   *Page*

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co.*, No. 04 Civ. 10014 (PLK),
    2006 U.S. Dist. LEXIS 34709, at *28-*29 (S.D.N.Y. May 30, 2006) ...............5

*Bethlehem Engineering Export Co. v. Christie*, 105 F.2d 933 (2d Cir. 1939) ................8

*Dweck v. Oppenheimer & Co.*, 30 A.D.3d 163, 163, 816 N.Y.S.2d 440, 440 (1st
    Dep't 2006) ...............4

*General Textile Printing & Processing Corp. v. Expromtorg Int'l Corp.*, 862 F.
    Supp. 1070, 1075 (S.D.N.Y. 1994) ...............4, 6

*Gulbenkian v. Gulbenkian*, 147 F.2d 173, 175 (2d Cir. 1945) ...............9

*La Mirada Products Co. v. Wassall PLC*, 823 F. Supp. 138, 140-41 (S.D.N.Y.
    1993) ...............6

*Lucente v. International Bus. Mach. Corp.*, 310 F.3d 243, 262 (2d Cir. 2002) ...............4

*Rosenfeld v. W.B. Saunders*, 728 F. Supp. 236, 244 (S.D.N.Y.), *aff'd mem.*, 923
    F.2d 845 (2d Cir. 1990) ...............4

*TAS Distrib. Co. v. Cummins Engine Co.*, No. 05-1371, 2007 U.S. App. LEXIS
    13892 at *33 (7th Cir. June 14, 2007) ...............9

*Thomas v. City of New York*, 143 F.3d 31, 34 (2d Cir. 1998) ...............3

*Travellers Int'l AG v. Trans World Airlines, Inc.*, 722 F. Supp. 1087, 1103-05
    (S.D.N.Y. 1989) ...............8

*United States v. New York City Bd. of Educ.*, No. 96 Civ. 374 (RML), 2002 U.S.
    Dist LEXIS 23956, at *24-25 (E.D.N.Y. July 24, 2002) ...............6

*USA Network v. Jones Intercable, Inc.*, 704 F. Supp. 488, 491-93 (S.D.N.Y. 1989) ...............6, 7

*Van Wagner Advertising Corp. v. S & M Enterprises*, 67 N.Y.2d 186, 192-93, 501
    N.Y.S. 2d 628, 631-32 (1986) ...............5

*Statutes*

Fed.R.Civ.P. 12(b)(1) ...............3

Fed.R.Civ.P. 12(b)(6) ...............10

***Other Authorities***

Restatement (Second) Contracts § 362 cmt. a ..................................................................9

Case 1:07-cv-03654-JSR   Document 13   Filed 07/20/2007   Page 4 of 14

***Preliminary Statement***

In its moving memorandum, defendant XM Satellite Radio Inc. ("XM") showed that this case is not appropriate for the equitable relief plaintiff Advanced Global Technology, LLC ("AGT") seeks for at least three independent reasons: (i) AGT's claims are predicated on uncertain and contingent events that may not occur as anticipated, if they occur at all, so that AGT's claim for equitable relief is not ripe; (ii) AGT has failed to allege any facts to suggest that its remedy at law would be inadequate; and (iii) specific performance is not feasible where, as here, the terms of the agreement embodying an ongoing relationship between the parties are too indefinite to be enforced without recurrent recourse to the court to do justice to both parties. For each of these reasons, XM established that the complaint should be dismissed.

AGT's response confirms that this is not an appropriate case for equitable relief, but is instead an effort to contort a damages claim into one for specific performance so as to avoid arbitration. This lawsuit is a simple breach of contract action for which damages, if proven, are the classic measure of relief. Indeed, AGT asserts that the factual basis for its complaint is XM's alleged past and current conduct, which AGT contends "has severely damaged, in fact essentially eliminated, AGT's satellite radio business." (Opp. Br. at 7) But AGT is contractually bound to proceed in arbitration for any damages claim (Compl. Ex. A § 12.2), and so cannot seek damages in this court. As demonstrated below, AGT's tactical decision to eschew damages so as to bring its claim in federal court does not overcome XM's showing that AGT is not entitled to equitable relief. Accordingly, AGT's complaint should be dismissed.

1

*Argument*

I. **AGT HAS NOT DEMONSTRATED THAT ITS CLAIM FOR EQUITABLE RELIEF IS RIPE**

Contrary to AGT's assertion (Opp. Br. at 7), XM has not "wholly ignored" the allegations of past and present conduct asserted in AGT's complaint, but it is not those allegations on which AGT's claim for equitable relief is based. To be sure, AGT has alleged that, in connection with last year's Sportscaster receiver product, XM: (i) failed to use commercially reasonable efforts to market AGT's products and to coordinate those efforts with AGT; (ii) failed to provide AGT with the access to information and technology and chipset pricing and availability to which AGT thought itself entitled; and (iii) unreasonably withheld approval of AGT's new product ideas, all of which, AGT asserts, "has severely damaged" AGT's business. (*Id.*)

Strangely, despite its obvious dissatisfaction with XM's past and present behavior and its assertion that it has been "severely damaged" by that behavior, AGT has not commenced an arbitration seeking damages for that alleged conduct. Rather, AGT asks this Court for an order affirmatively requiring XM to comply with certain provisions of the Agreement in the future, and enjoining XM from engaging in certain behavior if, in the future, XM were to enter into different possible business arrangements that it is allegedly contemplating. Specifically, for instance, AGT seeks an injunction solely to prevent XM from breaching the Agreement in the future if, at some time during the remaining term of the Agreement, XM were to consummate a merger with Sirius Satellite Radio, Inc. (Compl. at 17) AGT likewise seeks declaratory relief solely for a declaration that it would constitute a breach of the Agreement if, during the remaining term of the Agreement, XM were to enter into an exclusive arrangement with Audiovox or any other uni-

2

dentified third-party distributor or manufacturer. (*Id.*) And AGT seeks an order requiring specific performance of certain terms of the Agreement, not as to past behavior or last year's product, but solely with respect to possible future breaches that AGT hypothesizes may occur. (*Id.* at 16)

None of the contingent events on which AGT predicates its claim for equitable relief may occur as AGT anticipates they might, if they occur at all, and, for this reason, AGT's claim for equitable relief is not ripe for adjudication. *See Thomas v. City of New York*, 143 F.3d 31, 34 (2d Cir. 1998) (federal court "cannot entertain a claim which is based upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'") (citations omitted). Nothing in AGT's opposition brief – or, more importantly, its complaint – renders the future possible breaches AGT hypothesizes during the remaining term of the Agreement less contingent and uncertain. Thus, AGT's claim for equitable relief remains unripe and should be dismissed. Fed.R.Civ.P. 12(b)(1).

## II. AGT HAS NOT ALLEGED SUFFICIENT FACTS TO SUGGEST THAT IT HAS AN INADEQUATE REMEDY AT LAW

While AGT asserts that it has been "severely damaged" by XM's alleged conduct, it argues damages would be inadequate (i) because the Agreement involves a unique relationship for which monetary damages cannot be determined with any reasonable certainty, and (ii) because, absent an award of specific performance, AGT will be out of the satellite radio business entirely (Opp. Br. at 11-14), even though, as AGT acknowledges, it is in the consumer electronics business, not the satellite radio business. (Compl. ¶ 3) AGT argues that the Agreement contemplates that equitable relief may be appropriate in certain situations and then asserts, *ipse dixit*, that "AGT's claim is precisely such a situation." (*Id.* at 11) These arguments are wholly insufficient to satisfy the

3

requirement that AGT allege facts sufficient to demonstrate that its legal remedy is inadequate.

That the arbitration clause of the Agreement expressly does not preclude the parties from seeking equitable relief in a courtroom (Compl. Ex. § 12.2.4) does not further AGT's cause. Clearly, the parties contemplated that there may be situations when equitable relief would be appropriate because damages would be inadequate. Such a situation might exist, for instance, if one of the parties threatened to breach the confidentiality provisions of the Agreement. But whatever situations might be appropriate for equitable relief, there is nothing in the Agreement to support the notion that the parties contemplated the judicial award of equitable relief where it would not otherwise be appropriate or available. Thus, section 12.2.4 of the Agreement does not relieve AGT of its obligation to allege facts sufficient to demonstrate that its legal remedies are inadequate and that it is otherwise entitled to the equitable relief it seeks.

As XM previously explained, an action at law for damages is the classic remedy for breach of contract such as AGT alleges here. *General Textile Printing & Processing Corp. v. Expromtorg Int'l Corp.*, 862 F. Supp. 1070, 1075 (S.D.N.Y. 1994) (quoting *Rosenfeld v. W.B. Saunders*, 728 F. Supp. 236, 244 (S.D.N.Y.), *aff'd mem.*, 923 F.2d 845 (2d Cir. 1990)). Equitable remedies, like specific performance and injunctive relief, are deemed extraordinary and are rarely available for commercial breach of contract cases. *Lucente v. International Bus. Mach. Corp.*, 310 F.3d 243, 262 (2d Cir. 2002). Moreover, "causes of action for specific performance [are] properly dismissed [where the plaintiff] would have an adequate remedy at law." *Dweck v. Oppenheimer & Co.*, 30 A.D.3d 163, 163, 816 N.Y.S.2d 440, 440 (1st Dep't 2006).

AGT's argument that the Agreement involves a "unique relationship" which "necessarily renders calculation of its market value inherently difficult" (Opp. Br. at 11, 12) completely misses the mark. In *Van Wagner Advertising Corp. v. S & M Enterprises*, 67 N.Y.2d 186, 501 N.Y.S. 2d 628 (1986), on which AGT relies, the court made clear that "[t]he word 'uniqueness' is not . . . a magic door to specific performance. A distinction must be drawn between physical difference and economic interchangeability. . . . Putting aside contracts for the sale of real property, where specific performance has traditionally been the remedy for breach, uniqueness in the sense of physical difference does not itself dictate the propriety of equitable relief." 67 N.Y.2d at 192; 501 N.Y.S. 2d at 631-32.[1] Affirming the *denial* of specific performance, the court held that, for purposes of inadequacy of damages, uniqueness exists only where a court "cannot obtain, at reasonable cost, enough information about substitutes to permit it to calculate an award of money damages without imposing an unacceptably high risk of undercompensation on the injured promisee." 67 N.Y.2d at 193; 501 N.Y.S. 2d at 632 (citation omitted).

No such uniqueness existed in *Van Wagner*, and none exists here. Licensing opportunities abound, and the licensing relationship between XM and AGT is no more "unique" than any of the hundreds of thousands of other intellectual property licensing relationships that exist in the United States. Sufficient evidence about economically interchangeable substitute licensing opportunities is plainly available to establish

---

[1] As XM previously explained, the extraordinary circumstances in which specific performance might be appropriate invariably involve contracts for the one-time purchase of *goods* that "are unique in kind, quality or personal association where suitable substitutes are unobtainable or unreasonably difficult or inconvenient to procure." *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co.*, No. 04 Civ. 10014 (PLK), 2006 U.S. Dist. LEXIS 34709, at *28-*29 (S.D.N.Y. May 30, 2006).

that, whatever "uniqueness" characterizes the licensing relationship between XM and AGT, it does not place the relationship within the extraordinary circumstances under which specific performance is appropriate.

AGT's argument that specific performance is appropriate because damages would be impractical or speculative to determine (Opp. Br. at 13-14) is likewise misplaced. Courts and juries are frequently required to estimate damages where there is a lack of certainty, and "the mere necessity of making an informed approximation of damages should not preclude the adequacy of a legal remedy." *General Textile Printing & Processing Corp. v. Expromtorg Int'l Group*, 862 F. Supp. at 1075; *see also United States v. New York City Bd. of Educ.*, No. 96 Civ. 374 (RML), 2002 U.S. Dist LEXIS 23956, at *24-25 (E.D.N.Y. July 24, 2002) ("the mere impracticability of measuring damages is not enough to show the absence of a legal remedy"). Even in *USA Network v. Jones Intercable, Inc.*, 704 F. Supp. 488 (S.D.N.Y. 1989), a case on which AGT relies, the court denied equitable relief, stating that "the necessity in many cases of making an informed, perhaps rough, approximation of damages does not render the legal remedy inadequate." *Id.* at 493. And in *La Mirada Products Co. v. Wassall PLC*, 823 F. Supp. 138 (S.D.N.Y. 1993), another case on which AGT relies, the court acknowledged that a plaintiff "must allege facts to show that an action for breach of damages would be inadequate," and that "mere characterizations of difficulty [of proving damages] are not sufficient." *Id.* at 140-41 (citation omitted).[2]

---

[2] The court in *La Mirada* also explained that "specific performance is usually limited to contracts for whose breach the traditional remedy is inappropriate because the unusual goods or services involved are difficult to value." *Id.* at 141. It ordered the defendant to specifically perform its agreement to place certain disputed funds into a security escrow account pending resolution of the parties' dispute as to those funds on

*(cont'd)*

Finally, AGT erroneously argues that damages are inadequate because XM's alleged conduct "has essentially put AGT entirely out of the satellite radio business," relying on cases involving the destruction of a plaintiff's entire business. (Opp. Br. at 14) The term of the Agreement is a mere three years (with a one-year renewal), and nearly two years have already run. AGT's business operation is not dependent on the continuation of the Agreement. AGT itself asserts that it designs, develops and distributes a range of innovative consumer electronics (Compl. ¶ 3; Opp. Br. at 2), including audio and data systems and components for use in various markets. (Compl. Ex. A at 1) The "satellite radio business" is only a single part of AGT's business and – given the history of the Sportscaster as alleged in the complaint – not a very large or successful part. AGT has not alleged in the complaint, and indeed could not in good faith allege, that XM's conduct threatens to put AGT out of business. At best, the alleged conduct has reduced the number of AGT's product lines by one, and that reduction, if proven to be caused by improper behavior by XM, is compensable in damages. *See, e.g., USA Network v. Jones Intercable, Inc.*, 704 F. Supp. at 491-92 (distinguishing between "the destruction or catastrophic impairment" and "the mere disruption" of an ongoing business and holding the latter compensable in damages).

---

*(cont'd from previous page)*
the ground that there was "no way to measure the detriment to plaintiff of defendant's failure to fund the [escrow] account" pending resolution of the parties' dispute. *Id.* Otherwise put, it was impractical to calculate the value to the plaintiff of a fully funded security escrow account, the very purpose of which was to secure the plaintiff's ability to collect money from the defendant in the future. By contrast, there is nothing impractical about calculating the business losses AGT alleges flow from XM's conduct. That such a calculation may be an informed approximation does not render monetary damages inadequate.

7

## III. AGT HAS NOT SHOWN THAT SPECIFIC PERFORMANCE IN THIS CASE IS FEASIBLE

A further insurmountable obstacle to AGT's requested relief is its lack of feasibility, and nothing in AGT's opposition brief solves that problem. Contrary to AGT's assertion (Opp. Br. at 14-16), XM has not ignored the straightforward, objective obligations in the Agreement. To be sure, there are some of those, but they are not the provisions for which AGT seeks specific performance. AGT asks this Court to order specific performance directing XM: (i) to provide competitive pricing for AGT products; (ii) to make reasonable determinations as to the business need for potential future products and to approve those products without undue delay so as to ensure AGT's guaranteed 29% profit margin on Licensed Products; (iii) to use commercially reasonable efforts to market AGT's products and to coordinate such efforts with AGT; (iv) to provide AGT no less favorable access to information and technology and chipset pricing and availability than it provides to other third-party manufacturers and distributors; and (v) not to withhold approval unreasonably of AGT's new products. (Compl. at 16)

All of the provisions of the Agreement underlying these requests are steeped in the exercise of the parties' subjective judgments as to price and marketplace competitiveness, business need, and commercial reasonableness. And, given the relationship of the parties to date, disagreements as to the exercise of those judgments seem certain to continue to arise.[3] Thus, like the court in *Bethlehem Engineering Export Co. v.*

---

[3] Unlike the "longstanding course of dealings" between the parties to a successful twenty-year relationship in *Travellers Int'l AG v. Trans World Airlines, Inc.*, 722 F. Supp. 1087 (S.D.N.Y. 1989), which "provide[d] more than adequate direction to enable them to operate . . . in the future without continual judicial involvement," *id.* at 1103-05, XM and AGT have no such longstanding course of amicable dealings to

*(cont'd)*

*Christie*, 105 F.2d 933 (2d Cir. 1939), this Court cannot issue an order requiring specific performance of those contract terms without taking on the burden of continuous supervision and repeated intervention in the parties' business decisions to do justice to both parties. *See, e.g., TAS Distrib. Co. v. Cummins Engine Co.*, No. 05-1371, 2007 U.S. App. LEXIS 13892 at *33 (7th Cir. June 14, 2007) ("specific performance is rarely an appropriate remedy where such a grant would mandate ongoing supervision by the court").

AGT's argument that courts routinely interpret contract terms involving business need, commercial reasonableness and other terms requiring the exercise of business judgment (Opp. Br. at 16) misses the point. That courts construe such terms in damages actions does not mean that such provisions are enforceable prospectively by specific performance. It is well established that a contract may be certain enough to constitute a valid contract for purposes of a damages action and yet be too indefinite to be specifically enforced. *Gulbenkian v. Gulbenkian*, 147 F.2d 173, 175 (2d Cir. 1945); Restatement (Second) Contracts § 362 cmt. a (contract terms may be "certain enough to provide the basis for the calculation of damages but not certain enough to permit the court to frame an order of specific performance . . . and to determine whether the resulting performance is in accord with what has been ordered"). And because of the availability of the contempt power for disobedience, it is equally "well settled that for the granting of specific performance the contract must be sufficiently certain in its terms to permit the decree to state with some exactness what the defendant must do." *Gulbenkian v. Gulbenkian*, 147 F.2d at 175; *accord TAS Distrib. Co. v. Cummins Engine Co.*, No. 05-1371, 2007 U.S.

---

*(cont'd from previous page)*
  guide them; indeed, AGT complains that XM has never complied with some of the disputed provision of the Agreement.

App. LEXIS 13892 at *33 (7th Cir. June 14, 2007) (requiring licensee to "make all reasonable efforts to market and sell" licensed product too imprecise to order specific performance; "an order for specific performance is appropriate only when the terms of the contract are sufficiently specific to allow the precise drafting of such an order").

The order AGT requests, requiring XM to provide "competitive" pricing, use "commercially reasonable" efforts, or not withhold its approval "unreasonably," does not state with any degree of exactness the specific conduct that XM must perform to avoid contempt for disobedience. The contract terms are too indefinite to allow a precise drafting of an order of specific performance that would set forth exactly what XM must do without recurring recourse to the court to do justice to both parties. Thus, the equitable relief AGT seeks in this case is simply not feasible, and the case should be dismissed for failure to state a claim for which relief may be granted. Fed.R.Civ.P. 12(b)(6).

### *Conclusion*

For each of the foregoing reasons, as well as for the reasons set forth in XM's moving brief, XM's motion to dismiss AGT's complaint should be GRANTED.

Dated:  July 20, 2007                      Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

/s/ Jeffrey A. Mishkin
Jeffrey A. Mishkin (JM-8380)
Anthony J. Dreyer (AD-3571)
Peter S. Julian (PJ-3443)
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
*Attorneys for Defendant*
   *XM Satellite Radio Inc.*