```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- x
ADVANCED GLOBAL TECHNOLOGY, LLC,        :
                                        :
            Plaintiff,                  :    07 Civ. 3654 (JSR)
                                        :
            -v-                         :    MEMORANDUM ORDER
                                        :
XM SATELLITE RADIO, INC.,               :
                                        :
            Defendant.                  :
--------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

In a single-count complaint, plaintiff Advanced Global Technology, LLC ("AGT"), alleges that defendant XM Satellite Radio, Inc. ("XM") breached - and will further breach - the October, 2005 Master License Agreement (the "Agreement") between the parties under which AGT was to design, develop, and distribute digital satellite radio receivers for use with XM's digital satellite radio service. AGT seeks equitable relief in the form of an injunction, specific performance of the contract, and a declaratory judgment, but does not make any claim for damages.

Following defendant XM's motion to dismiss the case pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1), the Court, by Order dated August 3, 2007 ("August 3 Order"), dismissed AGT's claims without prejudice to the complaint being re-filed in the event the contingent future concerns alleged by AGT ripen into an actual dispute warranting equitable relief. This Memorandum Order briefly states the reasons for the August 3 Order ruling and directs the entry of final judgment.

The pertinent allegations, as set forth in the complaint, are as follows. Defendant XM is a Delaware corporation with its principal place of business in Washington, DC. (Compl. at ¶ 4). XM is in the business of providing digital audio radio content deliverable via satellite. Id. Plaintiff AGT is a company that designs, develops and distributes a range of innovative consumer electronics. (Compl. at ¶ 3). The radio content that XM sends out via satellite is receivable by specially designed satellite and terrestrial receivers incorporating proprietary XM chipsets that receive and decode XM's digital satellite signals. (Compl. at ¶¶ 10,11). In October 2005, AGT entered into an agreement with XM to develop and distribute receivers compatible with XM's satellite radio service for a period of three years, with an automatic one-year renewal. (Compl. at ¶¶ 9,10).

The Agreement, governed by New York law, establishes the rights and obligations of each party toward the other. (Compl. Ex. A ("Agreement") § 13.10). Under the Agreement, AGT is to have complete access to any XM technology that XM makes available to any third party commercial purchaser of XM chipsets. (Ex. A § 2.2.1). The section of the Agreement entitled "MFN Provisions"[1] contains a number of provisions guaranteeing AGT no less favorable treatment than is given to other third party manufacturers or distributors. (Ex. A §§ 6.9.1 – 6.9.6). XM is prohibited from providing third-party manufacturers or distributors with subsidy payments "that are more

---

[1] MFN stands for "most favored nation." Compl. ¶ 14.

favorable than those provided to [AGT] on the same product category with similar price points, unless such action is required for product close out or balancing inventory." (Ex. A § 6.9.2). However, XM is not required to subsidize an AGT product for which XM believes there is no business need. (Ex. A § 2.3). XM is also required to "provide at least as much aggregate promotional support for [AGT]'s Licensed Products" as it provides to other third parties for the same product category with similar price points. (Compl. at ¶ 14© & Ex. A § 6.96). The Agreement also contains other provisions for cooperative marketing efforts.  (Ex. A §§ 2.1.3, 4.1, 2.5.2).

The Agreement stipulates that disputes that cannot be settled amicably must be sent to binding arbitration.  (Ex. A § 12.1, 12.2.1-12.2.3).  In that connection, the Agreement also specifically limits damages to lost profits. (Ex. A § ¶ 6.8.2).  However, the Agreement permits either party to seek equitable relief in a court of law for the other party's breach of its obligations specified in the Agreement.  (Ex. A §12.2.4).  It is pursuant to this latter provision that plaintiff commenced the instant action.

Specifically, as noted, AGT here seeks to enjoin, and to obtain other equitable relief with respect to, what AGT alleges are past, present and possible future breaches of the Agreement by XM. As to past and current breaches, AGT alleges that XM failed to cooperate with AGT in planning to meet customer demands and meeting projected production quantities (Compl. at ¶ 60); failed to provide competitive pricing for AGT products (Compl. at ¶ 61); failed to

3

ensure AGT's guaranteed profit margin (Compl. at ¶ 62); failed to meet with AGT to discuss AGT's new product concepts and marketing plans (Compl. at ¶ 63); failed to support AGT's products or to assist in marketing AGT products (Compl. at ¶ 64); failed to provide AGT with access to information and technology and chipset pricing and availability as provided to other third parties (Compl. at ¶ 65); and unreasonably withheld approval of AGT's new products while approving similar products of other third parties (Compl. at ¶ 67). AGT also alleges that XM may breach the Agreement in the future by forming an exclusive distributorship agreement with an AGT competitor, Audiovox (Compl. at ¶ 66), or by merging with Sirius, the only other satellite radio service provider, and thereafter working with an exclusive in-house distributor (Compl. at ¶ 68C).

With respect to past breaches, however, AGT has an adequate remedy at law, viz., damages, the traditional remedy for breach of contract. See General Textile Printing & Processing Corp. v. Expromtorg Int'l Corp., 862 F. Supp. 1070, 1075 (S.D.N.Y. 1994). Although specific performance might be warranted where money damages would be inadequate, see Litho Prestige v. News America Publishing, Inc., 652 F. Supp. 804, 809 (S.D.N.Y. 1986), this is not the case here. The primary "inadequacy" of which AGT complains in this regard, i.e., that the Agreement limits damages to lost profits, is precisely what the parties to the Agreement bargained for, and equity will not countenance AGT's transparent attempt to evade this agreement through the device of the instant action.

AGT also argues that its remedies at law are inadequate

4

because "(i) the licensing agreement involves a unique relationship; (ii) monetary damages cannot be determined with any reasonable certainty; and (iii) absent an award of specific performance, AGT will be out of the satellite radio business entirely" (Pl. Mem. at 11). Beginning with the latter, nothing in the complaint would support a reasonable inference that AGT's business is under imminent threat of destruction or catastrophic impairment. See USA Network v. Jones Intercable, Inc., 704 F. Supp. 488, 491 (S.D.N.Y. 1989). Moreover, the Agreement expires, at the latest, in October 2009, after which XM will evidently have no obligation to continue the relationship. Consequently, this case does not fall within the unusual set of cases where an indefinite, long-term licensing agreement can give rise to equitable relief.

Similarly, nothing in the Complaint supports the argument that money damages to remedy the alleged breaches could not be calculated with certainty, especially since, as noted, damages are strictly limited to lost profits. See General Textile Printing & Processing Corp. v. Expromtorg Int'l Group, 862 F. Supp. 1070, 1075 (S.D.N.Y. 1994). Finally, the bare and conclusory statement that the licensing agreement involves a "unique relationship" is nothing but window dressing and does not, of itself, give rise to any equitable relief.

Regarding the allegations that XM may possibly breach the Agreement in the future, such claims are nothing more than unripe speculation. Injunctive relief "will not be granted against something merely feared as liable to occur at some indefinite time in

5

the future." Connecticut v. Massachusetts, 282 U.S. 660, 674, 51 S. Ct. 286, 291 (1931). Accord, e.g., USA Network v. Jones Intercable, Inc., 704 F. Supp. 488, 493 (S.D.N.Y. 1989).

Likewise, although this Court may, at its discretion, exercise jurisdiction over a declaratory action, see 28 U.S.C. § 2201(a), the declaratory relief AGT seeks - a court declaration "that any exclusive agreement between XM and Audiovox or any other third-party distributors or manufacturers would constitute a breach of the Master License Agreement" - involves contingent issues not ripe for adjudication and seeks an interpretation of the contract that would seem obvious and therefore not in dispute. See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 261 F. Supp. 293, 295 (S.D.N.Y. 2003) (the standard for ripeness in a declaratory judgment action is whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment"). It is therefore premature to address whether these events, were they to actually occur, warrant relief.

The Court has considered plaintiff's other arguments and finds them similarly without merit. Accordingly, the Clerk is directed to enter final judgment dismissing the Complaint in its entirety. Since no events have occurred since the Court issued the August 3 Order that have led to a re-filing by plaintiff, the final judgment will now recite that the dismissal is with prejudice.

SO ORDERED.

6

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       October 29, 2007