```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- x
ADVANCED GLOBAL TECHNOLOGY, LLC,       :
                                       :
          Plaintiff,                   :
                                       :       07 Civ. 3654(JSR)
          -v-                          :
                                       :       MEMORANDUM ORDER
XM SATELLITE RADIO INC.,               :
                                       :
          Defendant.                   :
--------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

By Order dated August 3, 2007, the Court granted the motion of defendant XM Satellite Radio, Inc. ("XM") to dismiss the original Complaint ("Compl.") filed by plaintiff Advanced Global Technology ("AGT"), without prejudice to plaintiff's filing an Amended Complaint if disputes dismissed as unripe ripened into actual disputes warranting equitable relief.  See Advanced Global Tech., LLC v. XM Satellite Radio, Inc., 2007 WL 3196208 *1 (S.D.N.Y. Oct. 29, 2007). On November 12, 2007, plaintiff filed an Amended Complaint ("Amd. Compl.") and defendant now moves to dismiss that complaint as well. Full familiarity with the underlying allegations, as set forth in the Court's prior orders, is here presumed.

In the original Complaint, plaintiff alleged that defendant had breached, and would continue to breach, the October 2005 Master License Agreement between the parties under which AGT was to design, develop, and distribute digital satellite radio receivers for use with XM's satellite radio service.  Compl. ¶¶ 9, 10.  The Amended Complaint gave greater particularity to these assertions, alleging that AGT "was formed for the sole purpose of doing business with XM,"

Amd. Compl. ¶ 9, that "AGT's business with XM accounted for approximately 100% of AGT's gross revenue for the fiscal years 2005-2006," id. at ¶ 65, that "XM's continuing repudiation of its relationship with AGT has put AGT out of the satellite radio business and thwarts the purpose for which AGT was founded," id., that the "loss of virtually all this revenue, and the absence of any reasonable prospect that it will be replaced by sales of receivers for XM, creates a life-threatening financial outlook for AGT," id., and that "the financial harm caused by XM, combined with the broader and unquantifiable harm to AGT's business reputation and relationships, has placed AGT in jeopardy of going out of business entirely, absent intervention by this court." Id. at ¶ 68.

The Amended Complaint also alleges that "recent events have demonstrated unequivocally that XM has an exclusive distribution relationship with [AGT's competitor] Audiovox for large volume products on the retail shelf," Amd. Compl. ¶ 55, that XM's product line for 2008 does not include any AGT products, id. at ¶ 57, and that the "price points for which AGT's products are intended [are] devoted exclusively to products distributed by Audiovox," id. at ¶ 60. Furthermore, the Amended Complaint alleges that AGT, in contrast to other suppliers, was not informed of the new technology for XM's fourth and fifth generation chipsets until September 2007, when it was already too late to incorporate the information into the 2008 product cycle. Id. at ¶ 64. Lastly, while the original Complaint alleged that XM "was, and continues to be, engaged in discussions

2

with, and actively pursuing, a potential merger with Sirius," Compl. ¶ 54, the Amended Complaint alleges that the proposed merger with Sirius is imminent.  Amd. Compl. ¶ 59.

Taken together, the added allegations regarding the threat to AGT's business suffice, if just barely, to state a claim for specific performance, the primary relief requested by plaintiff.  Under New York law, before the "extraordinary equitable remedy of specific performance may be ordered [in a contract dispute], the party seeking relief must demonstrate that remedies at law are incomplete and inadequate to accomplish substantial justice."  Lucente v. Int'l Bus. Mach. Corp., 310 F.3d 243, 262 (2d Cir. 2002) (internal quotation marks omitted).  One such circumstance exists "where the prospective breach, if unrestrained, threatens the destruction or catastrophic impairment of an ongoing business."  USA Network v. Jones Intercable, Inc., 704 F.Supp. 488, 491 (S.D.N.Y. 1989).  See also Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp., 992 F.2d 430, 435 (2d. Cir 1993) (threat to the continued existence of a business can constitute irreparable injury).  In this case, AGT's allegations indicating that it is in serious jeopardy of going out of business absent specific performance, and specifying why this would be so, are sufficient to survive dismissal.

However, while the case must therefore proceed, it still may not include at this point any dispute over the allegations in the Amended Complaint that XM may possibly breach the Agreement in the future after a putative merger with Sirius -- and the accompanying request

3

for an order enjoining XM, "in the event of a merger with Sirius, from taking any actions that would defeat AGT's rights under the [Agreement]" -- because these matters are no more ripe for adjudication now then they were when the Court dismissed them from the first complaint. If and when the actual merger with Sirius occurs, and if, thereafter, XM actually takes any steps that would defeat AGT's rights under the Agreement, then and only then will this part of the case be ripe.

As to AGT's request for a declaration that the exclusive agreement between XM and Audiovox "or any other third-party distributors or manufacturers" constitutes a breach of the Agreement, a declaration that an exclusive agreement between XM and "any other third-party distributor[] or manufacturer[]" would violate the agreement is no more ripe for determination now than it was when the Court first dismissed it, as it lacks "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 261 F. Supp.2d 293, 295 (S.D.N.Y. 2003) (internal quotation marks omitted).

Plaintiff, having chosen, in lieu of seeking preliminary injunctive relief, to seek a speedy trial, has estimated that the case can be trial-ready in two to three months. See transcript, 1/4/08, at 7. Accordingly, unless defendant shows good cause to the contrary, trial of this case will commence on March 31, 2008 at 9 a.m. Counsel should jointly prepare a discovery plan on that basis and submit it to the Court by February 5, 2008. If counsel are unable to agree on such a plan, or if defendant (but not plaintiff)

4

believes more time is required, counsel for the parties should submit their respective plans on that same date.

SO ORDERED.

                                                    JED S. RAKOFF, U.S.D.J.

Dated:   New York, New York
         February 1, 2008

believes more time is required, counsel for the parties should submit their respective plans on that same date.

    SO ORDERED.

                                                       JED S. RAKOFF, U.S.D.J.

Dated:    New York, New York
             February 1, 2008

5