Jeffrey A. Mishkin
Anthony J. Dreyer
Peter S. Julian
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
*Attorneys for Defendant XM Satellite Radio Inc.*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ADVANCED GLOBAL TECHNOLOGY,
LLC,                                                    :

                          Plaintiff,                 :      No. 07 cv 3654 (JSR)
                                                 ECF CASE

      - against -                                       :

XM SATELLITE RADIO INC.,                  :

                        Defendant.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ANSWER AND COUNTERCLAIM

        Defendant XM Satellite Radio Inc. ("XM"), by and through its undersigned attorneys, files this answer to the First Amended Complaint ("Complaint") of plaintiff Advanced Global Technology, LLC ("AGT"). In light of the Court's decision holding that certain aspects of the Complaint are not yet ripe or otherwise cannot support any claim for equitable relief, and thus have been dismissed from the case, XM asserts that many of the allegations of the Complaint are no longer relevant. Accordingly, XM's answers to each of the allegations of the Complaint is not intended, and should not be construed, to be an acknowledgement of the relevance of any of the allegations of the Complaint.

1.    XM denies the allegations in paragraph 1 of the Complaint, except admits that AGT purports to base the subject matter jurisdiction of this Court on diversity of citizenship pursuant to 28 U.S.C. § 1332(a).

2.    XM denies the allegations in paragraph 2 of the Complaint, except admits that AGT purports to base venue in this Court pursuant to 28 U.S.C. § 1391(a).

3.    XM denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 of the Complaint, except affirmatively states that, at the time it entered into the Master License Agreement with XM, a copy of which is attached as Exhibit A to the Complaint, AGT represented that it was already "a manufacturer and distributor of audio and data systems and components for use in various markets."

4.    XM admits the allegation in paragraph 4 of the Complaint.

5.    XM denies the allegations in paragraph 5 of the Complaint.

6.    XM denies the allegations in paragraph 6 of the Complaint, and further denies knowledge or information sufficient to form a belief as to the truth of the allegations concerning the amount of money AGT has invested to design, import, market and distribute XM receivers.

7.    XM denies the allegations in paragraph 7 of the Complaint.

8.    XM denies the allegations in paragraph 8 of the Complaint.

9.    XM denies the allegations in paragraph 9 of the Complaint, and affirmatively states that, at the time it entered into the Master License Agreement with XM, a copy of which is attached as Exhibit A to the Complaint, AGT represented that it was already "a manufacturer and distributor of audio and data systems and components for use in various markets."

10.    XM denies the allegations in paragraph 10 of the Complaint, except admits that the Master License Agreement, a copy of which is attached as Exhibit A to the Complaint, was executed as of October 17, 2005, and further affirmatively states that the Agreement speaks for itself.

11.    XM denies the allegations in paragraph 11 of the Complaint to the extent AGT seeks to characterize the provisions of the Master License Agreement, and affirmatively states that the Master License Agreement, a copy of which is attached as Exhibit A to the Complaint, speaks for itself.

12.    XM denies the allegations in paragraph 12 of the Complaint to the extent AGT seeks to characterize the provisions of the Master License Agreement, and affirmatively states that the Master License Agreement, a copy of which is attached as Exhibit A to the Complaint, speaks for itself.

13.    XM denies the allegations in paragraph 13 of the Complaint to the extent AGT seeks to characterize the provisions of the Master License Agreement, and affirmatively states that the Master License Agreement, a copy of which is attached as Exhibit A to the Complaint, speaks for itself.

14.    XM denies the allegations in paragraph 14 of the Complaint to the extent AGT seeks to characterize the provisions of the Master License Agreement, and affirmatively states that the Master License Agreement, a copy of which is attached as Exhibit A to the Complaint, speaks for itself.

15.    XM denies the allegations in paragraph 15 of the Complaint to the extent AGT seeks to characterize the provisions of the Master License Agreement, and affirmatively

states that the Master License Agreement, a copy of which is attached as Exhibit A to the Complaint, speaks for itself.

16.    XM denies the allegations in paragraph 16 of the Complaint to the extent AGT seeks to characterize the provisions of the Master License Agreement, and affirmatively states that the Master License Agreement, a copy of which is attached as Exhibit A to the Complaint, speaks for itself.

17.    XM denies the allegations in paragraph 17 of the Complaint to the extent AGT seeks to characterize the provisions of the Master License Agreement, and affirmatively states that the Master License Agreement, a copy of which is attached as Exhibit A to the Complaint, speaks for itself.

18.    XM denies the allegations in paragraph 18 of the Complaint to the extent AGT seeks to characterize the provisions of the Master License Agreement, and affirmatively states that the Master License Agreement, a copy of which is attached as Exhibit A to the Complaint, speaks for itself.

19.    XM denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 of the Complaint.

20.    XM denies the allegations in paragraph 20 of the Complaint, except admits that the suggested retail price for the Sportscaster was $59.99.

21.    XM denies the allegations in paragraph 21 of the Complaint, except admits that the product was named Sportscaster.

22.    XM denies the allegations in paragraph 22 of the Complaint, and further denies knowledge or information sufficient to form a belief as to the truth of the allegations concerning AGT's participation at the 2006 Consumer Electronics Show.

23.     XM denies the allegations in paragraph 23 of the Complaint.

24.     XM denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 of the Complaint.

25.     XM denies the allegations of paragraph 25 of the Complaint, except admits that, on or about February 16, 2006, AGT and XM representatives discussed sales projections for Sportscaster.

26.     XM denies the allegations in paragraph 26 of the Complaint, and further denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first and third sentences of paragraph 26.

27.     XM denies the allegations in paragraph 27 of the Complaint.

28.     XM denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 of the Complaint.

29.     XM denies the allegations in paragraph 29 of the Complaint, except admits that on or about May 26, 2006, XM requested that AGT stop shipments of the Sportscaster pending the resolution of a possible emissions issue.

30.     XM denies the allegations in paragraph 30 of the Complaint.

31.     XM denies the allegations in paragraph 31 of the Complaint.

32.     XM denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32 of the Complaint.

33.     XM denies the allegations in paragraph 33 of the Complaint, and further denies knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence in paragraph 33 of the Complaint.

34.     XM denies the allegations in paragraph 34 of the Complaint.

35.     XM denies the allegations in paragraph 35 of the Complaint.

36.     XM denies the allegations in paragraph 36 of the Complaint.

37.     XM denies the allegations in paragraph 37 of the Complaint.

38.     XM denies the allegations in paragraph 38 of the Complaint.

39.     XM denies the allegations in paragraph 39 of the Complaint, except admits that the Sportscaster was not included in the rebate promotions for the Xpress and Roady2.

40.     XM denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40 of the Complaint.

41.     XM denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41 of the Complaint, except admits that, in or around July to September 2006, XM offered a mail-in rebate on the Sportscaster.

42.     XM denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42 of the Complaint.

43.     XM denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 43 of the Complaint, except admits that XM engaged in promotional activities in connection with the Audiovox Xpress.

44.     XM denies the allegations in paragraph 44 of the Complaint, except admits that in late 2006 and early 2007, XM and AGT discussed possible sales projections for the Sportscaster.

45.     XM denies the allegations in paragraph 45 of the Complaint, except admits that AGT and XM representatives met in January 2007 at the 2007 Consumer Electronics Show.

46.     XM denies the allegations in paragraph 46 of the Complaint, except admits that during the CES show, AGT and XM discussed XM's Sportscaster demand projections for 2007, and further admits that AGT and XM discussed meeting in the future, but that no meeting was ever scheduled by either side.

47.     XM denies the allegations in paragraph 47 of the Complaint, except admits that Audiovox began selling a new XM-compatible, plug-and-play receiver in or around June of 2007.

48.     XM denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48 of the Complaint.

49.     XM denies the allegations in paragraph 49 of the Complaint

50.     XM denies the allegations in paragraph 50 of the Complaint.

51.     XM denies the allegations in paragraph 51 of the Complaint.

52.     XM denies the allegations in paragraph 52 of the Complaint.

53.     XM denies the allegations in paragraph 53 of the Complaint.

54.     XM denies the allegations in paragraph 54 of the Complaint.

55.     XM denies the allegations in paragraph 55 of the Complaint.

56.     XM denies the allegations in paragraph 56 of the Complaint, except admits that, on September 17, 2007, AGT representatives attended a meeting at XM's headquarters in Washington, DC.

57.     XM denies the allegations in paragraph 57 of the Complaint and avers that AGT has not submitted to XM any proposed prototype products for sale in 2008 or later.

58.    XM denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58 of the Complaint, and affirmatively states that its distribution relationship with Audiovox is not exclusive.

59.    XM denies the allegations in paragraph 59 of the Complaint, except admits that Sirius scheduled its shareholder meeting to approve the merger for November 13, 2007.

60.    XM denies the allegations in paragraph 60 of the Complaint, except admits that, pursuant to its non-exclusive license agreement with Audiovox, XM subsidizes and promotes new Audiovox receivers, and avers that AGT has not submitted to XM any proposed prototype products for sale in 2008 or later.

61.    XM denies the allegations in paragraph 61 of the Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence in paragraph 61 of the Complaint.

62.    XM denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 62 of the Complaint.

63.    XM denies the allegations in paragraph 63 of the Complaint, and affirmatively states that AGT has not proposed any products for inclusion in the 2009 retail year product lineup.

64.    XM denies the allegations in paragraph 64 of the Complaint.

65.    XM denies the allegations in paragraph 65 of the Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 65 of the Complaint concerning AGT's financial condition.

66.    XM denies the allegations in paragraph 66 of the Complaint.

67.    XM denies the allegations in paragraph 67 of the Complaint.

68.    XM denies the allegations in paragraph 68 of the Complaint.

69.    XM repeats and realleges each and every response in paragraph 1 through 68 of this Answer and Counterclaim as if fully set forth herein.

70.    XM admits the allegations in paragraph 70 of the Complaint, except affirmatively states that if, contrary to AGT's express representation in the Master License Agreement, AGT was in fact not already "a manufacturer and distributor of audio and data systems and components for use in various markets" at the time it entered into the Master License Agreement, then AGT fraudulently induced XM to enter into the Master License Agreement, or breached a material representation to XM, and, on either ground, XM is entitled to rescission of the Master License Agreement.

71.    XM denies the allegations in paragraph 71 of the Complaint.

72.    XM denies the allegations in paragraph 72 of the Complaint.

73.    XM denies the allegations in paragraph 73 of the Complaint.

74.    XM denies the allegations in paragraph 74 of the Complaint.

75.    XM denies the allegations in paragraph 75 of the Complaint.

76.    XM denies the allegations in paragraph 76 of the Complaint.

77.    XM denies the allegations in paragraph 77 of the Complaint.

78.    XM denies the allegations in paragraph 78 of the Complaint.

79.    XM denies the allegations in paragraph 79 of the Complaint.

80.    XM denies the allegations in paragraph 80 of the Complaint.

81.    XM denies the allegations in paragraph 81 of the Complaint.

## FIRST AFFIRMATIVE DEFENSE

82.    The Complaint fails to state a claim for which relief can be granted.

9

## SECOND AFFIRMATIVE DEFENSE

83.    AGT's prayer for equitable relief is barred by the doctrine of unclean hands.

## COUNTERCLAIM

XM, for its counterclaim against AGT, alleges as follows:

1.    This counterclaim is brought for rescission of the Master License Agreement on the alternative grounds that AGT either breached a material representation to XM or fraudulently induced XM to enter into the Master License Agreement by representing that it had prior experience in the manufacture and distribution of audio and data systems and components for use in various markets.  XM relied to its detriment on that representation when it entered into the Master License Agreement, and would not have entered into the Master License Agreement with AGT if it had known that AGT's representation about its experience was false and that AGT was formed solely to enter into the Master License Agreement with XM.

2.    Defendant-counterclaim plaintiff XM is a corporation organized under the laws of Delaware with its principal place of business in Washington, DC.  XM is in the business of providing a digital audio radio service of over 170 channels of digital radio content delivered via satellite.

3.    Upon information and belief, plaintiff-counterclaim defendant AGT is a limited liability corporation organized under the laws of New York and doing business at 105 Madison Avenue, New York, New York.

4.    XM and AGT entered into the Master License Agreement, a copy of which is attached as Exhibit A to the Complaint, as of October 17, 2005.  At the time the parties entered into the Master License Agreement, AGT represented that it was already "a manufacturer

10

and distributor of audio and data systems and components for use in various markets." AGT's representation to XM that it had experience in the manufacture and distribution of audio and data systems and components for use in various markets was a material and primary inducement for XM to agree to enter into the Master License Agreement with AGT. If AGT had not represented that it had experience in the manufacture and distribution of audio and data systems and components for use in various markets prior to its relationship with XM, XM would not have entered into the Master License Agreement with AGT.

5.      Contrary to its material representation that, at the time it entered into the Master License Agreement, it was already "a manufacturer and distributor of audio and data systems and components for use in various markets," AGT now alleges in its Complaint that it "was formed for the sole purpose of doing business with XM" and that, "[b]ased on XM's assurances of an enduring and bright future for a new business partner, AGT was formed." (Compl. ¶ 9) If such allegations are true, then AGT's material representation that it had prior experience as "a manufacturer and distributor of audio and data systems and components for use in various markets" at the time the parties entered into the Master License Agreement was false, and constituted both a breach of a material representation and a fraudulent inducement for XM to enter into the Master License Agreement.

6.      Furthermore, if the allegations of paragraph 9 of the Complaint are true, then AGT made the material misrepresentation that it was already "a manufacturer and distributor of audio and data systems and components for use in various markets" at the time the parties entered into the Master License Agreement with the intent to deceive XM, and in fact did deceive XM into believing that AGT already had experience in the manufacture and distribution of audio and data systems and components for use in various markets.

7.    XM would not have entered into the Master License Agreement with AGT if it had known that AGT's representation that AGT was already "a manufacturer and distributor of audio and data systems and components for use in various markets" was not true.  Accordingly, if the allegations of the paragraph 9 of the Complaint are true, then XM relied on AGT's material misrepresentation that AGT was already "a manufacturer and distributor of audio and data systems and components for use in various markets" to its detriment.

8.    XM has no adequate remedy at law.  If the material representation concerning the extent of AGT's prior experience as "a manufacturer and distributor of audio and data systems and components for use in various markets" is not true, then AGT is not qualified as a licensee of XM's technology and should not have access to it.  Moreover, AGT's breach renders it unable to fulfill its own obligations under the Master License Agreement, thereby excusing any further compliance by XM with that Agreement.

9.    If the allegations of paragraph 9 of the Complaint are true, then AGT's misrepresentation that it was already "a manufacturer and distributor of audio and data systems and components for use in various markets" at the time the parties entered into the Master License Agreement constitutes a fraudulent inducement for which XM is entitled to the equitable remedy of rescission of the Master License Agreement.

WHEREFORE, defendant-counterclaim plaintiff XM prays for judgment on its counterclaim in its favor and against plaintiff-counterclaim defendant AGT:

A.    Ordering rescission of the Master License Agreement and declaring the Master License Agreement null and void; and

B.    Awarding defendant-counterclaim plaintiff XM such other  and further relief as to this Court shall appear just and proper.

12

Dated:  February 12, 2008

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP

/s/ Jeffrey A. Mishkin
Jeffrey A. Mishkin
Anthony J. Dreyer
Peter S. Julian
Four Times Square
New York, New York  10036
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
*Attorneys for Defendant*
    *XM Satellite Radio Inc.*